Richard C. MULLINAX, Jr. and Perry Pike, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

RADIAN GUARANTY INC. and Amerin Guaranty Corporation, Defendants.

No. 1:00CV01247.

United States District Court, M.D. North Carolina.

Jan. 25, 2002.

---

5. For this reason, I do not have to reach the other defenses asserted by the institutional defendants.

Martha Melinda Lawrence, Patterson Harkavy & Lawrence, Raleigh, NC, Michael D. Calhoun, Gulley Eakes and Volland, Durham, NC, Melvyn I. Weiss, Michael C. Spencer, Anita B. Kartalopoulos, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, Larry I. Smith, Thompson & Smith, P.C., Thomas W. Tucker, John B. Long, Tucker Everitt Long Brewton & Lanier, Augusta, GA, for Plaintiffs.

Mack Sperling, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, David Smith, Wendy Beetlestone, Schnader Harrison Segal & Lewis, LLP, Philadelphia, PA, for Defendants.

### *MEMORANDUM OPINION*

BEATY, District Judge.

This matter comes before the Court on a Motion to Dismiss [Document # 9] by Defendants Radian Guaranty Inc. and Amerin Guaranty Corporation (together "Radian" or "Defendants"). Against these Defendants, Plaintiffs Richard C. Mulli-

nax, Jr. ("Mullinax") and Perry Pike ("Pike") (together "Plaintiffs")[1] allege violations of Section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED in Part and DENIED in part. Furthermore, Plaintiffs are granted LEAVE TO AMEND within thirty days.

## I. BACKGROUND

On or about June 2, 1999, Plaintiffs Mullinax and Pike obtained a home mortgage through Crestar Mortgage Corporation ("Crestar"). Under the terms of this mortgage, Crestar required that Plaintiffs purchase primary mortgage insurance and referred them to Defendants, providers of primary mortgage insurance. Plaintiffs contracted with Defendants to purchase the needed primary mortgage insurance.

Mortgage insurance is often a necessary purchase for mortgagors who wish to borrow more than eighty percent of the property's purchase price. Although the borrower pays for the insurance, mortgage insurance primarily protects the lender by insuring the lender, up to a specified amount, in the event of the borrower's default. However, even though the borrower is not the beneficiary of primary mortgage insurance, he still benefits because the availability of primary mortgage insurance results in lenders who are willing to advance funds based on smaller down payments.

The actual selection of the primary mortgage insurance provider is done, according to Plaintiffs, by the lender, even though the borrower pays for the premiums. (Pls.' Compl. at 3.) Because the lender selects the provider but does not pay for the insurance, Plaintiffs contend that the competitive forces usually working in a free market to lower prices are stifled. *Id.* Instead of competing for borrowers' business by offering lower prices, Radian allegedly overcharged the borrowers and then used these excess profits to reward the lenders who refer their borrowers to Radian for the purchase of primary mortgage insurance. Radian allegedly provided these incentives through several structured transactions, including four types of independent business transactions that, for the purposes of this opinion, the Court will refer to collectively as "kickbacks." These kickbacks include pool insurance sales, contracts with captive insurance companies, underwriting contracts, and performance notes. In light of their importance in this case, each of these methods warrant further discussion.

The first alleged kickback, supplemental pool insurance ("pool insurance"), is a product that Radian provides to lenders who wish to take advantage of certain federal programs through which the Federal Home Loan Mortgage Corporation ("Freddie Mac") or the Federal National Mortgage Association ("Fannie Mae") purchase pools of insurance policies. In order to participate in the federal programs, however, the lenders must pay an annual guaranty fee to protect the government organizations from losses not covered by the loans' primary mortgage insurance policies. One way to reduce this guaranty fee is to obtain a pool insurance policy that protects the loan pool purchaser from this risk. As a provider of both pool and primary insurance, Radian allegedly reward-

---

1. Despite this action's heading, the case has not yet been certified as a class action under Rule 23 of the Federal Rules of Civil Procedure. Although Local Rule 23.1 generally requires that the named plaintiffs desiring to represent a class move for class certification within the ninety days after the filing of the Complaint, Plaintiffs requested and received an Order from the Court [Document # 12] allowing them additional time to file their certification motion. M.D.N.C. R. 23.1.

ed the lenders who referred their primary insurance business to Radian by discounting the lenders' rates on these pool insurance policies. Plaintiffs believe that this discount was an illegal reward for the primary mortgage insurance referrals.[2]

Secondly, according to Plaintiffs, Radian provided unearned benefits to lenders through captive reinsurance agreements. Such an agreement involves lenders with wholly-owned subsidiaries that are engaged in the business of reinsuring primary mortgage insurance policies. Under a captive reinsurance agreement, the subsidiary and the insurers enter into a contract whereby the subsidiary assumes some of the risk of default that the insurer carries for its primary mortgage insurance policies. In exchange, the insurer pays the subsidiary a part of the borrowers' mortgage insurance premiums. Effectively, this arrangement allows the insurance company to subcontract out a portion of the risk of its primary insurance policies to the lenders. Although Plaintiffs do not allege that the practice itself violates any law, they do contend that Radian paid to the lenders' subsidiaries a price that is higher than the usual price for these services, and this higher price translated into a kickback for the lenders.

In the third type of kickback, Plaintiffs contend that unearned profits are transmitted to the lenders through Radian's underwriting. Although Plaintiffs do not describe this kickback in much detail, their Complaint suggests that, as in the other two kickbacks already discussed, Radian provided services, in this case underwriting services, to the lenders at greatly discounted prices.

Finally, Plaintiffs allege that Radian provided kickbacks to the lenders by fun-neling them rebates through performance notes. In this scheme, Radian allegedly borrowed from the lender an amount that directly correlated to the value of the lender's home loans that Radian insured. Under the terms of these loans, the variable interest rates were inversely proportional to the actual damages Radian incurred from the insurance policies. Accordingly, the lenders would earn more interest from Radian as its loans insured by Radian's primary mortgage insurance policies became less risky. This practice translated into an interest rate that, Plaintiffs contend, greatly exceeded the market rates, constituting the fourth kickback method.

Upon their belief that Radian engaged in at least these four kickback practices, Plaintiffs brought suit under the federal Real Estate Settlement Procedures Act ("RESPA"), contending that these practices, to the extent they were disguised methods to provide kickbacks and to split fees with the lenders, are activities prohibited by RESPA's anti-kickback provision, 12 U.S.C. § 2607. Plaintiffs request a variety of remedies, including damages and injunctive relief. In response, Radian filed this Motion to Dismiss for Failure to State a Claim [Document # 9], arguing that Plaintiffs' claims were both time-barred and barred by a second federal statute, the McCarran–Ferguson Act. As part of their response to Radian's motion, Plaintiffs filed a Request for Oral Argument [Document # 15]. Plaintiffs' request shall be denied by the Court, because the Court concludes that oral argument would not be helpful in its consideration of this motion. The Court now turns to Radian's Motion to Dismiss.

---

**2.** In some instances, Radian would allegedly reach this same result by selling two-tier primary insurance. Under this type of policy, if the property's mortgage is later sold to Fred-die Mac or Fannie Mae, the primary mortgage insurance policy itself can be converted into a primary mortgage insurance policy and a pool insurance policy.

## II. DISCUSSION

To support its Motion to Dismiss, Radian maintains that Plaintiffs' Complaint embodies a total of four deficiencies. The first of these four grounds for Radian's Motion to Dismiss is that the statute under which Plaintiffs bring suit, RESPA, cannot be enforced against Radian because of another federal statute, the McCarran–Ferguson Act. Alternatively, Radian requests dismissal based on its second basis, that Plaintiffs' suit is time-barred by RESPA's statute of limitations. If Radian's argument on either of these two theories is correct, then the Court must dismiss Plaintiffs' case in its entirety. If the Court does not grant Radian's motion in its entirety for these two reasons, Radian requests partial dismissal of Plaintiffs' Complaint for two additional deficiencies. As its first reason for partial dismissal, Radian maintains that Plaintiffs only properly allege a RESPA violation through one kickback method, discounted pool insurance. As a result, Radian requests dismissal of Plaintiffs' claims of violations by the other kickback methods. As its second reason for partial dismissal, Radian asserts that the injunctive relief Plaintiffs request is an unavailable remedy for RESPA plaintiffs. As a result, Radian requests dismissal of Plaintiffs' Complaint to the extent that Plaintiffs request injunctive relief. The Court will consider these arguments in turn after first determining the appropriate standard of review.

### A. Standard of Review

This motion comes before the Court as a Rule 12(b)(6) motion to dismiss for failure to state a claim. When deciding a Rule 12(b)(6) motion, the Court reviews the complaint using a relaxed standard, "accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231,

244 (4th Cir.1999). Accordingly, dismissal is only appropriate when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). Because this motion is designed to test solely "the legal adequacy of the complaint," dismissal based on an affirmative defense is only appropriate when the defense "clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993). Relying on these principles, the Court reviews Radian's first argument, in which Radian contends that another federal statute, the McCarran–Ferguson Act, prevents Plaintiffs from bringing suit under RESPA by preempting RESPA in the instant circumstances.

### B. The McCarran–Ferguson Act

As their first argument for dismissal of Plaintiffs' claim, Radian argues that Plaintiffs cannot proceed because the statute on which Plaintiffs rely, RESPA, is not applicable to the purchase of mortgage insurance in this instance. This argument relies on the McCarran–Ferguson Act ("the Act"), a federal statute designed to let states regulate the insurance business with minimal governmental interference. Essentially, Radian contends that Plaintiffs' relief, if any, must be based upon a violation of North Carolina insurance law and not the federal remedies established by RESPA. Evaluating Radian's argument in this instance requires an initial description of the Act's history and its effect.

Prior to 1945, the insurance industry had traditionally been regulated by the states, not by the federal government. Contrary to the status quo, the Supreme Court in *United States v. South–Eastern Underwriters Association* declared that

the federal government could regulate insurance, under the powers vested in Congress through the Constitution's Commerce Clause. *See United States v. S.-E. Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Specifically, the Supreme Court held that the Sherman Act, which applies to businesses involved in interstate commerce, also applied to the business of insurance. *Id.* Not anticipating this action by the Supreme Court but being concerned about the effect of other federal statutes on the insurance industry, Congress passed the McCarran–Ferguson Act. The Act was designed to protect against unintended federal intrusion in the insurance industry. Towards this end, the Act explains that the business of insurance shall "be subject to the laws of the several States," and then clarifies that

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance
> . . . .

15 U.S.C. § 1012(a)-(b).

■■■ Interpreting this language, the Supreme Court has ruled that the Act prevents the application of a federal law, thus allowing state law preemption, in certain circumstances. *Humana Inc. v. Forsyth*, 525 U.S. 299, 306–07, 119 S.Ct. 710, 716, 142 L.Ed.2d 753 (1999). Initially, the party seeking to invoke the Act must identify a state law that affects "the business of insurance," defined as "the relationship between the insurance company and the policyholder, the type of policy which could be issued, its reliability, interpretation, and enforcement." *Sec. and Exch. Comm'n v. Nat'l Sec., Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 569, 21 L.Ed.2d 668, 676 (1969). Furthermore, there must be a conflict between the state law and the federal law, for the

Act only authorizes state preemption of federal statutes that would "invalidate, impair, or supersede" the state's law. 15 U.S.C. § 1012(b). Even if these preconditions are satisfied, however, the Act does not protect a state law by authorizing state law preemption when the federal law "specifically relates to the business of insurance." *Id.* This last requirement confirms that Congress retains the power to override state insurance law when it desires, and that the McCarran–Ferguson Act's purpose is simply to prevent "inadvertent" federal intrusion into state regulation. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 39, 116 S.Ct. 1103, 1111–12, 134 L.Ed.2d 237, 249 (1996).

Therefore, in order to successfully argue for dismissal based on the McCarran–Ferguson Act's state law preemption, Radian must demonstrate that RESPA supercedes, invalidates, or impairs a state law which serves to regulate the business of insurance. Moreover, even if Radian succeeds as to this point by demonstrating a sufficient impairment, Radian's request for state law preemption will not be granted if RESPA specifically relates to the business of insurance. On the other hand, while Defendant must argue that the instant controversy satisfies both of these conditions, Plaintiffs can establish that their RESPA claims are not preempted by demonstrating that just one of the conditions for state-law preemption is not satisfied. Determining the effect of the Act on this proceeding, then, requires a detailed inquiry into the federal statute at issue here, RESPA, and the North Carolina laws regulating insurance.

### 1. Description of the Federal Statute, RESPA

As an initial matter, for Radian to argue that the McCarran–Ferguson Act applies in this lawsuit and authorizes state law

preemption of a federal law, the suit must necessarily involve a federal law. Radian meets this requirement by identifying RESPA, the federal statute under which Plaintiffs bring this suit, as the qualifying statute. In order to understand the effect of the McCarran–Ferguson Act and to more properly compare RESPA to the allegedly conflicting state statute, a brief summary of RESPA as it relates to this case is helpful.

Congress passed RESPA in part to achieve the "elimination of kickbacks or referral fees" in the settlement process of home sales. 12 U.S.C. 2601(b)(2). Towards this end, RESPA requires that certain practices and procedures be followed in the settlement by a lender of a "federally related mortgage loan." 12 U.S.C. §§ 2601—2617. This term, "federally related mortgage loan," refers to certain loans secured by properties that are designed as residences for four families or less. *Id.* § 2602(1). Such a home loan becomes a federally related mortgage loan, subject to RESPA's requirements, if a lender is regulated or insured by a federal agency, if the lender issues the loan in connection with a federal housing program, or if the lender sells its loans to certain government-sponsored enterprises.[3] *Id.* Although Plaintiffs do not explicitly state that their loan meets these requirements, their reliance on RESPA, which only applies to borrowers of this type of loan, and Radian's silence on this matter leads the Court to infer that Plaintiffs' home mortgage does qualify as a federally related mortgage loan.

In order to protect the borrowers of these federally related mortgage loans from "unnecessarily high settlement charges," RESPA prohibits certain preferential arrangements between the lenders and the providers of settlement services. *Id.* §§ 2601(a), 2607(a). Specifically, 12 U.S.C. § 2607 states:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

*Id.* § 2607(a). RESPA provides the following definition of "settlement services":

any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement.

*Id.* § 2602(3). To enforce this subsection, RESPA gives borrowers injured by an improper kickback agreement a right to sue and recover "an amount equal to three times the amount of any charge paid for such settlement service." *Id.* § 2607(d)(2). Additionally, the borrower may sue for court costs and reasonable attorneys fees. *Id.* § 2607(d)(5). In the present case, Plaintiffs attempt to exercise the rights that RESPA provides based upon their assertion that Radian allegedly provided unearned kickbacks to Radians' referring

---

**3.** By name, these enterprises are Fannie Mae, the Government National Mortgage Associa-   tion, and Freddie Mac. *Id.* § 2602(1)(B)(iii).

lenders. Although not disputing that RESPA provides a cause of action for private citizens who are the victims of mortgage insurance kickbacks, Radian contends that Plaintiffs fail to state a claim. Relying on the North Carolina state laws that regulate kickbacks, Radian asserts that, given the body of state law, the McCarran–Ferguson Act prevents the application of RESPA in this instance.

### 2. Description of the State Law

Under the McCarran–Ferguson Act, state law only preempts federal laws that relate to insurance if the federal laws act to "invalidate, impair, or supersede" a state law that is enacted "[f]or the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). As support for its contention that North Carolina has an applicable state law that regulates the business of insurance, Radian relies on Section 58–63 of North Carolina's Insurance Law ("Insurance Law"). This statute prohibits all "unfair methods of competition or unfair and deceptive acts," and specifically defines these practices to include undisclosed arrangements in which an insurer or broker gives or offers, "as an inducement to insurance," "any rebate, discount, abatement, credit" or "any valuable consideration or inducement." N.C. Gen.Stat. § 58–63–15; *see also* N.C. Gen.Stat. § 58–63–10.

While the statute itself only provides for enforcement of its provisions through the state's Insurance Commissioner, the North Carolina courts have determined that a violation of section 58–63–15 of the Insurance Law also serves as a violation of the state's Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1, which does provide a private right of action. *See Miller v. Nationwide Mut. Ins. Co.*, 112 N.C.App. 295, 302, 435 S.E.2d 537, 542 (1993). Recognizing that compensatory damages alone might not deter, North Carolina law triples the compensatory damages. N.C. Gen.Stat. § 75–16. In fact, if the plaintiff chooses to characterize his injury as a tort action, he can even recover punitive damages if the insurer has acted with fraud, malice, or willful and wanton conduct. N.C. Gen.Stat. 1D–15; *Mapp v. Toyota World, Inc.*, 81 N.C.App. 421, 344 S.E.2d 297, *cert. denied*, 318 N.C. 283, 347 S.E.2d 464 (1986). In many instances, the punitive damages available through such a tort action can exceed the amount of damages available under RESPA, which does not authorize punitive damages. N.C. Gen.Stat. § 1D–25(b) ("Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater.").

However, identifying an applicable state statute is only the first step. Before Radian can take advantage of the inverse preemption allowed by the McCarran–Ferguson Act, it must also establish that the state statute was enacted "for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). A non-exclusive description of the "business of insurance" includes those activities involving "[t]he relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement." *Id.* at 460, 89 S.Ct. at 568, 21 L.Ed.2d at 676.

■ Radian argues that, by prohibiting the use of any secret transactions or bonuses that are not disclosed by the policy, this North Carolina statute regulates the business of insurance, in that the statute regulates the rates charged by the insurance company to the consumer. With respect to a state law that regulated the insurance rates paid by consumers, the Supreme Court has held that such a law did relate to the business of insurance. *Humana*, 525 U.S. at 307, 119 S.Ct. at 716,

**320**

142 L.Ed.2d 753; *see also Merchs. Home Delivery Serv., Inc. v. Frank B. Hall & Co.,* 50 F.3d 1486, 1488–90 (9th Cir.), *cert. denied,* 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995) (holding that "overcharging for premiums" was part of the business of insurance). The Court concludes that the Insurance Law's provision prohibiting kickbacks regulates the business of insurance, thus satisfying this condition of the McCarran–Ferguson Act. In light of this finding, the Court moves to the next requirement for state law preemption, as authorized by the McCarran–Ferguson Act, by examining the interaction between the state and federal laws.

### 3. Conflict Between the State and Federal Laws

In order for the state statute to override and therefore preempt a federal statute that affects the business of insurance, the McCarran–Ferguson Act requires that the federal law "invalidate, impair, or supersede" the state law. 15 U.S.C. § 1012(b). Radian does not suggest that RESPA serves to "invalidate" the state law, defined by the Supreme Court to mean "to render ineffective, generally without providing a replacement rule or law." *Humana,* 525 U.S. at 307, 119 S.Ct. at 716, 142 L.Ed.2d 753. Accordingly, the issue before the Court becomes whether, for purposes of the McCarran–Ferguson analysis, RESPA would supersede or "impair" the North Carolina statutes at issue.

■ The reference to supersede in this instance, as defined by the Supreme Court, means "to displace (and thus render ineffective)" the applicable provisions of the state law, replacing them with a substitute rule. *Humana,* 525 U.S. at 307, 119 S.Ct. at 716, 142 L.Ed.2d 753. When this principle is applied to the statutes at issue here, the North Carolina insurance statute and RESPA's anti-kickback provisions appear complimentary in that both statutes pro-

tect the borrower from higher rates caused by hidden rebates, kickbacks, or other items of consideration. Furthermore, RESPA does not replace the state insurance law, but instead supplements it by providing a federal cause of action. Accordingly, the Court finds that RESPA does not supersede the relevant sections of the North Carolina Insurance Law.

Alternatively, Radian also argues that RESPA impairs the North Carolina Insurance Law, thus triggering state law preemption under the McCarran–Ferguson Act. Initially, determining whether a federal statute "impairs" a state statute requires an understanding of this word's meaning. The Supreme Court has provided some clarification as to when impairment between a federal law and a state law takes place. Specifically, the Supreme Court has noted that a federal law impairs a state law when the federal law directly conflicts with a state law, "frustrate[s] any declared state policy" or "interfere[s] with a State's administrative regime." *Id.* at 310, 119 S.Ct. at 717, 142 L.Ed.2d 753. Radian contends that the impairment occurs here in the following ways. First of all, Radian maintains that impairment exists because RESPA is a strict liability statute, while North Carolina's statutes require evidence of the defendant's intent before imposing liability. Secondly, Radian maintains that RESPA differs greatly from the applicable North Carolina statutes in the method of calculating damages. Relying on this difference, Radian underscores what it perceives as a difference in the policy considerations associated with RESPA, as compared to those embodied in North Carolina law, as support that RESPA obstructs a declared state policy and therefore should be considered an impairment.

In its first argument as to why RESPA impairs state law in this instance, Radian

contends that RESPA imposes liability in a wider set of situations than covered by North Carolina law. To support this contention, Radian depicts RESPA as a strict liability statute, while the applicable North Carolina law requires that a plaintiff prove that the defendant acted intentionally. With respect to the question of whether intent is necessary to state a violation, this Court, however, finds that Radian mischaracterizes the federal statute, because the applicable provisions of RESPA do indeed require an element of intent to establish a violation. To be subject to RESPA liability, a defendant must give or accept a kickback "pursuant to [an] agreement or understanding" that business would be referred to or by the defendant. 12 U.S.C. § 2607. Thus, a violation only occurs when the defendant agrees to a kickback scheme and then acts on it—steps that would also suffice to prove intent under the North Carolina law. *See, e.g., Mercado v. Calumet Fed. Savings & Loan Ass'n,* 763 F.2d 269, 270 (7th Cir.1985) (holding that a violation of RESPA's anti-kickback provision occurs when a defendant overcharges the plaintiff in accordance with an agreement to pay or otherwise share the profits with another person); *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986) (explaining that a violation of the North Carolina Unfair and Deceptive Trade Practices Act only requires evidence of general intent, instead of fraudulent intent, bad faith, or other specific intent). Accordingly, Radian's first argument that RESPA impairs a state law must fail because there is no conflict between the intent requirements

of RESPA and the applicable North Carolina statutes.

As previously noted, Radian also attempts to demonstrate that RESPA impairs the North Carolina Statutes by suggesting that the different damages provisions of the two laws demonstrate the impairment needed to trigger state law preemption. In particular, Radian argues that North Carolina law requires proof of "actual injury as a proximate result" of the kickback, while RESPA does not require any proof of injury. *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986). As a second difference in the damages provisions of the two statutes, Radian maintains that North Carolina trebles the amount of compensatory damages for a violation of the Insurance Law, while RESPA trebles the value of the settlement service itself. These differences, Radian contends, are significant enough to constitute an "impairment," as defined by the McCarran–Ferguson Act, of the North Carolina Statutes. If Radian's assertions that the different damages available under RESPA do impair the state law are correct, then the McCarran–Ferguson Act would apply and the state insurance code would preempt RESPA's anti-kickback provision.

Even accepting, arguendo, Radian's interpretation of RESPA as to the issue of damages to the extent that RESPA's remedy triples the price of the entire value of the settlement service itself,[4] as compared to the state law's trebling the amount of any compensatory damages, the Court still does not find any impairment that would "directly conflict" with the North Carolina

---

4. The Court notes that at least one appellate court would disagree with Radian's characterization of RESPA's measurement of damages. The Seventh Circuit has interpreted RESPA's treble damages provision to triple the amount the plaintiff was overcharged in

order to fund the kickback, not the entire value of the settlement services. *Durr v. Intercounty Title Co. of Ill.,* 14 F.3d 1183, 1185 (7th Cir.), *cert. denied,* 513 U.S. 811, 115 S.Ct. 63, 130 L.Ed.2d 20 (1994).

statutes at issue. *Humana*, 525 U.S. at 309, 119 S.Ct. at 717, 142 L.Ed.2d 753. A federal statute does not impair a state statute simply because the two statutes differ; the difference must "directly conflict" with the state law, interfere with the state's administrative regime, or "frustrate" the state law's declared policy. *Id.* at 307, 311, 119 S.Ct. at 716, 718, 142 L.Ed.2d 753. Here, the differences that Radian emphasizes, in that they alter the potential amount of damages a plaintiff might receive, do not show direct conflict between RESPA and the applicable sections of the North Carolina Statutes. Accordingly, Radian can only succeed on this argument if RESPA's damages provision either interferes with North Carolina's administrative regime or frustrates its declared policy.

As to RESPA's potential to interfere with North Carolina's administrative regime, this type of impairment can occur in instances when a state has determined to deal with insurance regulation solely through governmental administrative enforcement actions but a federal law authorizes a private right of action. *See, e.g., LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640, 643 (8th Cir.1999) (holding that, under the McCarran–Ferguson Act, RICO impaired Minnesota law because the Minnesota statutory scheme did not provide a private right of action). However, in North Carolina, the Insurance Law establishes an administrative remedy against those who provide illegal kickbacks that coexists with a private remedy for the injured, as provided by the state's Unfair and Deceptive Trade Practices Act. *Miller*, 112 N.C.App. at 302, 435 S.E.2d at 542. As a result, North Carolina's administrative regime supplements its administrative remedies with a private right of action and it is therefore not significantly altered by the additional availability of a federal private remedy. *See Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d

Cir.2001) (finding that a federal law that provided private remedies did not interfere with the Pennsylvania's administrative regime established by an insurance statute, because Pennsylvania state law also authorized certain private remedies). For these reasons, the Court finds that RESPA's private remedy does not significantly impair North Carolina's administrative regime.

As to Radian's contention that RESPA's damages impair North Carolina law by obstructing the state's declared policy, the North Carolina law at issue reveals a policy and a purpose that are very similar to those embodied in RESPA. Through its statutes and its common law, North Carolina has chosen to protect its citizens from secret kickbacks, which might otherwise be hidden within their insurance premiums, by providing its citizens with a private right to sue. N.C. Gen.Stat. §§ 58–63–10, 58–63–15. The Court recognizes that in some instances the damages a plaintiff can recover under the state law might be less than those available under RESPA; on the other hand, the state law damages could exceed RESPA's remedy if the plaintiff asserts a tort action that alleges fraud. Again, this Court finds *Humana* helpful on this point, in that the interaction between the damages provisions in the statutes involved in *Humana*, that is, RICO and Nevada's insurance law, resembles the interaction between the damages provisions of RESPA and the North Carolina statutes. *Humana*, 525 U.S. at 312–13, 119 S.Ct. at 718–19, 142 L.Ed.2d 753. More specifically, Nevada's insurance law, like North Carolina's law, authorized damages that ordinarily were less than the federal remedy but could exceed the federal damages in certain situations involving fraud, malice or oppression. *Id.* In *Humana*, after considering this difference, the Supreme Court concluded that the potential for different damages under the

federal statute did not rise to the level of impairment necessary to authorize state law preemption under the McCarran–Ferguson Act. *Id.* Similarly, after comparing RESPA with the appropriate North Carolina statutes, the Court determines that RESPA does not impair North Carolina law but instead complements it. *See, e.g., Moore v. Liberty Nat'l Life Ins., Co.,* 267 F.3d 1209, 2001 WL 1172689 (11th Cir. Sept.28, 2001) (finding no impairment for purposes of the Act because Section 1983's broad anti-discrimination goals "complemented" Alabama's state policy, even though its law only prohibited one specific form of insurance-related discrimination). For these reasons, RESPA cannot be preempted by state law under the McCarran–Ferguson Act, for Radian has not demonstrated that RESPA acts to "invalidate, impair, or supersede" any North Carolina law. Accordingly, because Radian has not identified the requisite conflict between a state and a federal law, the Court finds that Radian's Motion to dismiss is DENIED to the extent Radian claims that the McCarran–Ferguson Act prevents RESPA's application. It is therefore not necessary to determine whether Radian's argument also fails because RESPA specifically relates to insurance.[5]

## C. Statute of Limitations

■ As an alternative argument to its position that the McCarran–Ferguson Act preempts Plaintiffs' RESPA claim, Radian also argues that Plaintiffs are barred from bringing this suit by RESPA's one year statute of limitations. 12 U.S.C. § 2614. Initially, and before reaching the substance of Radian's argument, the Court notes that Radian's assertion that the statute of limitations bars Plaintiffs' action is an affirmative defense. This classification is significant, because the Motion before the Court is a motion to dismiss under Rule 12(b)(6). Accordingly, the procedural posture requires that the Court focus on the sufficiency of the Complaint itself, and not the strength of Defendants' defenses. *Richmond, Fredericksburg & Potomac R.R. Co.,* 4 F.3d at 250. However, a complaint can be dismissed based on an affirmative defense if the complaint itself states the elements of the defense. *See, e.g., LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir.1998) (acknowledging that "granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred"). In this instance, Plaintiffs' Complaint identifies the relevant dates necessary to determine whether Plaintiffs' action occurred within the limitations period. Accordingly, the Court finds that Radian's affirmative defense of the statute of limitations is evident from the Complaint itself and can therefore be a basis for a Rule 12(b)(6) dismissal.

---

5. As mentioned earlier, the state law preemption authorized by the McCarran–Ferguson Act does not apply in two instances. The Court has discussed the first basis, in that state law preemption does not occur if the federal law does not supercede, invalidate, or impair a state law, and the Court has determined on this ground that the applicable North Carolina law does not preempt RESPA. Through the briefs they have presented to the court, the parties extensively discuss the second method, which prevents state law preemption when the federal statute specifically relates to insurance. The Court need not address this issue, given its decision that the McCarran–Ferguson Act does not apply because there is not sufficient impairment. However, the Eleventh Circuit, in a case that similarly involved RESPA's anti-kickback provision, has reached precisely this issue, and has determined that RESPA does in fact specifically relate to insurance, thus preventing state law preemption on this alternate basis. *Patton v. Triad Guaranty Ins. Corp.,* 277 F.3d 1294 (11th Cir.2002).

In their Complaint, Plaintiffs allege a violation of 12 U.S.C. 2607, the anti-kickback provision. While RESPA authorizes a private right of action for a violation of the anti-kickback provision, it does require that the suit be brought within one year "from the date of the occurrence of the violation." 12 U.S.C. §§ 2607, 2614. However, Plaintiffs filed suit on December 15, 2000, more than eighteen months after June 2, 1999, the approximate date that Plaintiffs entered the mortgage contract at issue here. (Pls.' Complaint at 3). Consequently, Plaintiffs cannot pursue their claim unless some other event besides the closing settlement serves as a commencement point for the statute of limitations period or unless the statute of limitations is tolled either because of equitable estoppel or equitable tolling. The Court will discuss each of these possibilities in turn.

1. Commencement of the Limitations Period

In order to analyze Radian's assertion of a statute of limitations defense to the prosecution of Plaintiffs' claims, the Court first must determine when the limitations period begins. On this point, Plaintiffs argue that the limitations period starts upon their own discovery of the facts supporting their claim. Disagreeing, Radian contends that the beginning date should be the date of settlement itself. In general, the limitations period for a federal cause of action begins upon discovery of the injury, "when the plaintiff possesses sufficient facts about the harm done to him [such] that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir.1995), *cert. denied*, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996); *see also United States v. Kubrick*, 444 U.S. 111, 119–21, 100 S.Ct. 352, 358–59, 62 L.Ed.2d 259, 267–69 (1979) (holding that a claim accrues when an individual acquires knowledge of his injury). These require-

ments are met when "the plaintiff has, or ought to have, answers to two questions: Am I injured? Who injured me?" *Childers Oil Co., Inc. v. Exxon Corp.*, 960 F.2d 1265, 1272 (4th Cir.1992). However, this rule, often referred to as the "discovery rule," is a general rule of construction that is inapplicable when a statute requires a different time in "clear and unambiguous" language. *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87–88 (4th Cir.1990) (ruling that the explicit language of the Age Discrimination in Employment Act (ADEA) foreclosed using the discovery rule).

■ After reviewing the statute at issue, the Court determines that Congress specified that the limitations period for RESPA violations should begin within a year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. This specific language differs from the somewhat ambiguous phrase "when the action accrues" as is found in many of the statutes affected by the discovery rule. *See, e.g.,* Federal Tort Claims Act, 28 U.S.C. § 2401(b). Thus, the discovery rule would be inapplicable to the statutory language used here because Congress was explicit in establishing a designated time for the filing of an action for a violation of RESPA. Furthermore, the Fourth Circuit has reached the same conclusion as to similar wording in a different statute, holding that by starting the limitations period from an "occurrence" of the improper behavior, Congress intended to measure the limitations period by a "discrete event," thus making the discovery rule inapplicable. *1st Source Bank*, 928 F.2d at 88. This means then that RESPA's statute of limitations period would run from the date of the violation itself, not from the date of discovery as Plaintiffs would suggest.

■ Equally important to the measurement of the time period from "the occurrence of the violation" is the need to define

and identify the violation itself. A reading of RESPA's statute of limitations provision in conjunction with Section 2607 would suggest that the violation occurs when the borrower is overcharged by a provider of settlement services pursuant to an agreement to provide some form of a kickback to another provider. 12 U.S.C. §§ 2601(b)(2), 2607, 2614. Consequently, the violation occurs and the limitations period begins once a borrower overpays for a settlement service that is subject to such an agreement. *Id.* In this instance, where Plaintiffs contracted with Radian on or about June 2, 1999 at the closing settlement for their residence, any alleged violation occurred at this time. Given that RESPA's one year limitations period thus began running on June 2, 1999, Plaintiffs' lawsuit, which they filed on December 15, 2000, was brought eighteen months after the occurrence of the violation. Thus, Plaintiffs' lawsuit falls outside the statute of limitations period for a RESPA private cause of action.

To avoid this time-bar, Plaintiffs contend that a violation of the statute occurs upon each monthly payment for primary mortgage insurance premiums that a borrower makes after the settlement closing, for each payment relates to the illegal kickback agreements. Under such an interpretation, Plaintiffs would be free to initiate their suit within one year from the date of any single primary mortgage premium payment. For purposes of this case, which began on December 15, 2000, Plaintiffs' suit is time-barred unless the statute of limitations period began after December 15, 1999. However, under Plaintiffs' definition that a violation occurs whenever a borrower makes a payment towards an overcharged service, Plaintiffs reason that, because Plaintiffs paid at least one monthly payment towards their primary mortgage insurance after December 15, 1999, Plaintiffs suffered a violation of 12 U.S.C. § 2607 at that time and thus their lawsuit,

filed on December 15, 2000, falls within the statute of limitations.

To allow such an interpretation would create disparate results among borrowers, who apparently can elect either to pay for their insurance in one lump sum or through multiple payments, as Plaintiffs have done here. (Pls.' Resp. Defs.' Mot. to Dismiss at 11.) This would mean that a borrower who elected to make monthly payments would have a floating statute of limitations period based upon the date of his last payment. The situation would be different for a borrower who paid the full premium for his mortgage insurance on the date of the closing. Should such a borrower have the financial means to do this, he or she would be faced with a statute of limitations period for bringing a lawsuit under RESPA that is fixed at one year from the date of the closing. The Court can find no statutory support or legislative history that suggests that Congress intended to provide such an uneven benefit. At the very least it can be said that Congress did not expressly provide for such a result. If Congress had intended the statute of limitations to float in this way, it could have so provided in explicit language. In fact, other federal statutes demonstrate that Congress knew how to specify when a plaintiff's right to bring an action would be linked to a monthly payment. *See, e.g.,* The Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–1356 (specifying that the plaintiff must begin administrative action for an overpayment "within two years after the making of the payment"). Given RESPA's focus on the settlement transaction itself and the use of the phrase "at the time of the violation", the Court finds that any violation of RESPA occurred, if at all, when Plaintiffs initially obtained primary mortgage insurance from Radian on the date of the closing. Unfortunately for Plaintiffs, this event was eighteen months prior to the

date that Plaintiffs filed this action. Accordingly, Plaintiffs' suit is time-barred, unless some other event, giving rise to equitable estoppel or equitable tolling, tolled the statute of limitations.

### 2. Equitable Estoppel

■ As their first basis to toll the statute of limitations, Plaintiffs, who allege that Radian's misconduct concealed the kickback schemes, request that Radian be equitably estopped from asserting the statute of limitations as an affirmative defense. Equitable estoppel is appropriate when a plaintiff is aware of his potential claim, but "the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988); *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Comparing Plaintiffs' Complaint with these requirements reveals that they have not asserted the necessary facts for equitable estoppel. Nowhere within their Complaint do Plaintiffs state that they knew of their claim within the time period of the statute of limitations, from June 1999 until June 2000. As a result, to the extent that Plaintiffs were not even aware of any misconduct by Defendants within the limitations period that could have constituted equitable estoppel, Plaintiffs cannot rely upon the equitable estoppel doctrine to avoid RESPA's one year statute of limitations.

### 3. Equitable Tolling

Plaintiffs also assert, as a response to Defendants' defense of a statute of limitations bar, that Defendants' misconduct requires the equitable tolling of the statute of limitations until, at the earliest, December 17, 1999. The doctrine of equitable tolling pauses the statute of limitations when the defendants "conceal a fraud" or "commit[ ] a fraud in a manner that it

concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it." *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636, 639 (1874). Plaintiffs assert that Defendants' fraudulent concealment of the kickbacks prevented Plaintiffs from discovering their claim until either the summer of 2000, when Plaintiffs' counsel informed them of the possibility of these kickbacks, or December 17, 1999, when the media reported lawsuits asserting similar kickbacks against other primary mortgage insurers. (Pls.' Compl. at 11–12.) If equitable tolling tolls the statute of limitations at either of these dates, then Plaintiffs' suit, filed on December 15, 2000, would be within RESPA's one year statute of limitations.

■ While most causes of action are "traditionally subject to equitable tolling," Congress can provide otherwise for suits that arise under federal statutes. *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237, 246–47 (1989). Congress's ability to do so arises from its power to define federal causes of action. Because Congress may establish certain private causes of action, Congress, likewise, may also limit the right to bring a federal cause of action by imposing strict time frames for its utilization. *United States ex rel. Nitkey v. Dawes*, 151 F.2d 639, 642–44 (7th Cir.1945), *cert. denied*, 327 U.S. 788, 66 S.Ct. 808, 90 L.Ed. 1015 (1946). In statutes with jurisdictional limits, the timing requirement is not a waivable statute of limitations, but rather it is a jurisdictional bar that "strictly limits the power of the court" and makes equitable tolling unavailable. *Id.* at 643; *see also Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040–41 (D.C.Cir.1986). However, a federal statutory time limit will only be interpreted as a jurisdictional requirement, and therefore immune from eq-

uitable tolling, if Congress expresses this intent in "clear and unambiguous language." *Atlantic City Elec. Co. v. Gen. Elec. Co.*, 312 F.2d 236, 241 (2d Cir.1962), *cert. denied*, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963). The Court, therefore, should examine "the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed" in order to determine "whether Congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. Central R.R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).

■ In this case, although RESPA's limitation period is located in a section titled as "Jurisdiction of courts; limitations", the statute itself states in part that any suit under RESPA must be brought within "1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation." 12 U.S.C. § 2614. The mere fact that the caption of this section makes reference to "jurisdiction of courts" in its title does not represent or provide any legislative history to suggest that the time limitation described is a jurisdictional bar. The Court's finding in this regard is consistent with the reasoning of appellate courts which have ruled that a similarly-titled and similarly-worded statute of limitations period in a different statute, that being the Truth in Lending Act ("TILA"), did not create a jurisdictional bar.[6] *See, e.g., Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 501–03 (3d Cir.1998); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir.1984); *King v. California*, 784 F.2d 910, 914–15 (9th Cir.1986), *cert. denied*, 484 U.S. 802, 108 S.Ct. 47, 98

L.Ed.2d 11 (1987); *see also Lawyers Title Ins. Corp.*, 118 F.3d at 1166–67 (suggesting that RESPA does not create a jurisdictional bar, but not deciding the issue). These courts also found that the statute of limitations period associated with TILA was subject to a claim of equitable tolling against the party asserting a statute of limitations defense. *Ramadan*, 156 F.3d at 501–03; *TransOhio Savings Ass'n*, 747 F.2d at 1041; *King*, 784 F.2d at 914–15.

The Court is aware that in the case of *Hardin v. City Title & Escrow Co.*, the D.C. Circuit court determined that "because the time limitation contained in § 2614 [of RESPA] is an integral part of the same sentence that creates federal and state court jurisdiction, it is reasonable to conclude that Congress intended thereby to create a *jurisdictional* time limitation." *Hardin*, 797 F.2d at 1039 (emphasis in original). The D.C. Circuit supported its decision by referencing several cases reaching the same result. *Id.* These cases, however, differ from the case at hand because they involved sovereign immunity issues with the United States as a defendant. *Id.* at 1040; *see, e.g., Finn v. United States*, 123 U.S. 227, 229, 8 S.Ct. 82, 83, 31 L.Ed. 128, 129 (1887). Furthermore, the D.C. Circuit also supported its decision by relying upon the Sixth Circuit case of *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118, 1119 (6th Cir.1980), which held that the statute of limitations in TILA served as a jurisdictional bar. The decision in *Rust* was limited, however, through a later decision, in which the Sixth Circuit held that equitable tolling was indeed authorized by TILA. *TransOhio Savings Ass'n*, 747 F.2d at 1041.

---

**6.** The applicable subsection, 15 U.S.C. § 1640(e), is titled "Jurisdiction of courts; limitations on actions; State attorney general enforcement" and states in part that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Of some relevance to this issue is the only other appellate court opinion on this issue, a Fourth Circuit unpublished opinion in the case of *Zaremski v. Keystone Title Assocs.*, 1989 WL 100656, \*1, 884 F.2d 1391 (4th Cir.1989), which found, but without any extensive discussion of the issue, that RESPA established a jurisdictional bar. Notably, the *Zaremski* court's reasoning for its decision was sparse to the extent that the court summarized *Hardin*'s reasoning in a paragraph and concluded "we are not persuaded to disagree with the D.C. Circuit's reasoning." *Id.* at 1989 WL 100656, \*1, 884 F.2d 1391. Although no other appellate court has addressed this issue of equitable tolling as it relates to RESPA, federal district courts, in considering whether RESPA's statute of limitations is subject to equitable tolling, have answered in the affirmative, thus reaching results that are opposite to the decision in *Hardin.* *See, e.g., Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787, 793–96 (D.Md.1998); *Pedraza*, 114 F.Supp.2d at 1351–53, *Moll v. U.S. Life Ins. Co. of N.Y.*, 700 F.Supp. 1284, 1286–89 (S.D.N.Y.1988).

In view of the more recent developments on equitable tolling as it relates to RESPA violations, the Court takes note of the Supreme Court's direction for courts to focus on RESPA's "purposes and policies" to resolve questions of this nature. *Burnett*, 380 U.S. at 426, 85 S.Ct. at 1053, 13 L.Ed.2d 941. To that end, it is important to note that RESPA is a remedial statute that was designed for the "elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2). Given this purpose, it would be incongruent to treat RESPA's time limitation as a jurisdictional bar "reward[ing] those perpetrators who concealed their fraud long enough to time-bar their victims' remedy." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th

Cir.1998) (relying on this reasoning to determine that TILA is subject to equitable tolling). In light of RESPA's intent and in consideration of its language, the Court finds that RESPA's time limitation is not a jurisdictional requirement. The Court further finds that RESPA's statute of limitations period is therefore subject to equitable tolling.

■ Notwithstanding the Court's finding that equitable tolling is a possible response to Defendants' defense of the statute of limitations, Plaintiffs still must demonstrate that their circumstances satisfy the prerequisites for equitable tolling. In order for equitable tolling to apply, Plaintiffs' pleading must demonstrate "fraudulent concealment" by Radian that prevents Plaintiffs from uncovering "the facts which are the basis of [their] cause of action," even though Plaintiffs exercised "due diligence." *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974). Plaintiffs have the burden of proof for these requirements, although the Court reviews Plaintiffs' proof through the more relaxed evidentiary standard of a Rule 12(b)(6) claim. *Richmond, Fredericksburg & Potomac R.R. Co.*, 4 F.3d at 250; *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 597 (4th Cir.1976).

Accordingly, to demonstrate that equitable tolling acts to prevent the dismissal of their claim, Plaintiffs' Complaint must sufficiently allege the first above-mentioned requirement, that Radian fraudulently concealed the kickback schemes. To this end, Plaintiffs present three arguments. First, Plaintiffs maintain that a violation of RESPA's anti-kickback provision is a self-concealing wrong and, as a result, the mere act of violating the anti-kickback provision demonstrates Radian's fraudulent concealment of its alleged wrong-doing. In the alternative, Plaintiffs argue that Radian's use of sophisticated business transactions

to distribute the kickbacks to the lenders demonstrates that Radian fraudulently concealed the alleged kickbacks. Finally, as their third argument, Plaintiffs allege that Radian fraudulently concealed the kickbacks by agreeing with the lender to provide misleading information to Plaintiffs. Unless one of these three arguments demonstrates that Radian acted to fraudulently conceal the kickbacks, Plaintiffs will not have satisfied equitable tolling's first requirement and the doctrine of equitable tolling can therefore not be used to toll the statute of limitations.

As to Plaintiffs' first argument, under certain causes of action and in some jurisdictions, fraudulent concealment can be established merely by a showing of a violation of the law itself. *Hill v. Texaco, Inc.,* 825 F.2d 333, 335 n. 2 (11th Cir.1987). For these "self-concealing wrongs," the violation of a particular law in and of itself demonstrates fraudulent concealment, and the plaintiffs need not allege any other acts to meet this requirement of equitable tolling. *Id.* The Fourth Circuit, however, has not definitively accepted this theory, noting that use of a self-concealing wrong to demonstrate fraudulent concealment is "only even arguably proper when deception or concealment is a necessary element" of the violation. *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 123 (4th Cir.1995); *see also Detrick v. Panalpina, Inc.,* 108 F.3d 529, 541 (4th Cir.), *cert. denied,* 522 U.S. 810, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997).

■ For this reason, based on the Fourth Circuit's standard, the Court concludes that a violation of RESPA alone is not a self-concealing wrong, because the elements of RESPA do not include fraud, deception, or concealment. Instead, RESPA is violated when the lender or the insurer gives or accepts a "fee, kickback, or thing of value" in return for the referral of business "incident to or a part of a real estate settlement service." 12 U.S.C. § 2607. Accordingly, even if a kickback scheme "is generally secretive, it need not be so," and therefore it does not qualify as a self-concealing wrong. *Supermarket of Marlinton,* 71 F.3d at 123 n. 1.

■ Plaintiffs' next argument, in suggesting that Radian acted to fraudulently conceal the kickbacks by purposefully selecting a complicated method to funnel the kickbacks to the lenders, also provides little benefit to Plaintiffs. The difficulty with this argument is that "mere silence, or one's unwillingness to divulge one's allegedly wrongful activities," does not by itself establish fraudulent concealment. *Pinney Dock & Transport Co. v. Penn. Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir. 1988). While the business transactions that Radian allegedly participated in demonstrate a level of sophistication, the use of these transactions, without more, does not suggest that Radian acted affirmatively to fraudulently mislead Plaintiffs. At most, the kickback methods allegedly used by Radian, if proved, could demonstrate that Radian tried to hide these activities, but it does not demonstrate evidence of the type of affirmative effort to mislead which is usually required and present to justify a finding of fraudulent concealment.

As its final ground to show fraudulent concealment by Radian, Plaintiffs argue that Radian provided several allegedly misleading disclosure documents to Plaintiffs. These disclosure documents are mandated by RESPA, which requires that the lender, in a good faith estimate, disclose to the borrowers particular information about its relationship with service providers. In this regard, Plaintiffs contend that Radian engaged in fraudulent concealment to the extent that the lenders in this case failed to disclose and explain their relationship with Radian, with respect to the purported kickback scheme. Such a

theory has been recognized by some courts as a method to demonstrate fraudulent concealment when "the relationship of the parties imposes a duty upon the defendant to make disclosure." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978); *see also Hill*, 825 F.2d at 335 n. 2. However, such a duty-to-disclose relationship has not been alleged by Plaintiffs in this instance because the disclosure requirements embodied in RESPA bind the lender and not Radian. The mere act of disclosure violations by another party, in this instance the lenders, cannot be used to infer fraudulent conduct on behalf of Radian unless Plaintiffs allege "some link between the fraudulent conduct of [their] lender and Defendant." *Pedraza v. United Guar. Corp.*, 114 F.Supp.2d 1347, 1358 (D.Ga.2000).

Claiming that there is such a link, Plaintiffs allege that Radian and the lenders jointly agreed that the lenders would falsify these settlement documents and not disclose the lenders' relationship with Radian. According to Plaintiffs' Complaint, Radian, a sophisticated and powerful player in the mortgage insurance business, knew that the purported kickbacks violated the law. (Pls.' Compl. at 13.) Because Radian knew it was engaging in illegal conduct, it therefore had an "explicit or implicit understanding" with its lenders that the kickbacks given to the lenders would be concealed from the consumers through false and misleading statements in the RESPA-required disclosure documents. *Id.* This type of agreement, in which the lenders falsify documents, in terms of failing to disclose to Plaintiffs, as borrowers, the lenders' special relationship with Radian, as a condition of receiving kickbacks from Radian, could demonstrate fraudulent concealment and therefore could satisfy this additional requirement for demonstrating the applicability of equitable tolling.

However, in order for this claim to survive a motion to dismiss, Plaintiffs must have alleged this particular claim of fraudulent concealment in their pleading with sufficient particularity to satisfy the Federal Rules of Civil Procedure ("Rules"). Under the Rules, certain elements, including this element of equitable tolling, must be pled with greater specificity than otherwise would be required. Fed.R.Civ.P. 9; *see also Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 219 (4th Cir.1987) (requiring claims of equitable tolling to meet the particularity requirement). Accordingly, Plaintiffs' Complaint must provide the details necessary to determine "how, when, and in what manner" Radian and the lenders entered into any agreements to conceal their alleged kickback scheme. *Charlotte Telecasters, Inc.*, 546 F.2d at 574 (quoting *Stearns v. Page*, 48 U.S. (7 How.) 819, 829, 12 L.Ed. 928 (1849)).

■ Applying this procedural rule to the pleadings before it, the Court finds that Plaintiffs' Complaint does not provide sufficient details about how Radian's behavior amounted to an agreement to conceal its allegedly fraudulent acts. In the Complaint, Plaintiffs' primary allegation in support of this theory is a vague statement that an "implicit or explicit agreement" existed between Radian and the lenders. The only additional details that Plaintiffs provide is a statement that there were investigations by three state departments of insurance and by Fannie Mae into "one or more of the Kickback Schemes," and Radian defrauded these investigations by telling them that the kickbacks were actually legitimate business transactions. (Pls.' Compl. at 14.) These statements provide very little information about "how, when, and in what manner" Radian entered into any agreements that would constitute fraudulent concealment and there-

fore the allegations in Plaintiffs' Complaint do not satisfy Rule 9's requirements. Nor can Plaintiffs preserve this claim through the details they assert in Plaintiffs' Response to Radians' Motion to Dismiss, for the Court in a motion to dismiss "may not look to materials beyond the pleading itself." *Alioto v. Marshall Field's & Co.*, 77 F.3d 934 (7th Cir.1996). As a result, this element of equitable tolling is not properly pleaded. In light of this deficiency, and because equitable tolling is the only theory presented to the Court that could save this claim from Radian's defense of the statute of limitations, the Court finds that Plaintiffs have not properly stated an actionable claim.

Although the Court's finding would normally warrant dismissal of Plaintiffs' case, the Court is cognizant of the fact that the flaw in Plaintiffs' case is a procedural error. For that reason, mindful of its ability to grant a party leave to amend as justice requires, the Court will consider the remaining elements of equitable tolling to determine if Plaintiffs' Complaint would otherwise properly assert the elements necessary for equitable tolling to apply to Plaintiffs' circumstances. Therefore, if, except for the lack of particularity in its pleading as to fraudulent concealment, Plaintiffs' Complaint has satisfactorily alleged the remaining requirements for asserting the doctrine of equitable tolling, the Court will grant Plaintiffs leave to amend their Complaint in order to correctly allege, to the extent they can do so, fraudulent concealment by Radian with sufficient particularity as required by the Rules of Civil Procedure. Fed.R.Civ.P. 15, *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986); *Pedraza*, 114 F.Supp.2d at 1358.

Given the Court's previous discussion, the only additional element for a showing of equitable tolling that Plaintiffs must properly allege is that of the presence of due diligence on Plaintiffs' behalf in discovery of any claim that they may have been able to assert under RESPA. *Charlotte Telecasters, Inc.*, 546 F.2d at 574 n. 3. Because of this requirement, a plaintiff cannot take advantage of equitable tolling if "a reasonable person would be aware of the possibility of the claim," even if the defendant acted fraudulently. *Hentosh v. Herman M. Finch Univ. of Health Sciences/Chicago Med. Sch.*, 167 F.3d 1170 (7th Cir.1999). Plaintiffs allege that they would not have had sufficient "inquiry notice" here so as to require them to assert their claim any sooner because of Radian's use of complicated business practices to obtain the kickbacks and the subsequent misleading information provided on the disclosure documents regarding the existence of any such kickback arrangements. Furthermore, Plaintiffs also allege that due diligence would not have required them to act any sooner because Defendants' misrepresentations during the state and Fannie Mae investigations provided no additional warning signals that would have warranted investigation by Plaintiffs. (Pls.' Compl. at 14). Plaintiffs thus allege that the RESPA violation remained hidden and the statute of limitations remained tolled at least until December 17, 1999, when the news media first began reporting that lawsuits had been filed against other primary mortgage insurance companies for these types of violations. Because Plaintiffs could not reasonably determine the violation before this period even with due diligence, Plaintiffs assert that the statute of limitations period began some time after December 17, 1999, and thus their December 15, 2000 Complaint falls within the statute of limitations.

Based on these allegations, the Court determines that Plaintiffs' Complaint asserts a claim of proper due diligence to the extent that Plaintiffs discovered the availability of a RESPA claim and

reacted to it at the earliest possible date. While Radian counters Plaintiffs' argument by asserting that the mere existence of the state and Fannie Mae investigations indeed would have placed a reasonable person on inquiry notice of any potential RESPA claims, the Court finds that this type of factual determination is inappropriate when deciding a motion to dismiss under Rule 12(b)(6). Based on Plaintiffs' Complaint and construing all reasonable inferences in their favor, the Court finds that Plaintiffs sufficiently allege a set of facts that could support their claim of due diligence and their assertion that they did not have earlier knowledge of Defendants' conduct. Consequently, although the Court finds that Plaintiffs have not properly pled one of the elements of equitable tolling, that being fraudulent concealment, the Court does find that Plaintiffs' Complaint satisfactorily alleges the remaining requirements for equitable tolling. For these reasons, the Court, in its discretion, declines to grant Radian's motion to dismiss at this time, but instead the Court shall provide Plaintiffs with an extension of thirty days from the date of this Order to amend their Complaint so as to correctly assert the elements of equitable tolling as it relates to a showing of fraudulent concealment by Defendants.

### D. Plaintiffs' Allegation of the Kickback Methods

In addition to the two arguments for dismissal of Plaintiffs' Complaint in its entirety, Radian argues in the alternative that partial dismissal of the claim is also warranted. As its first of two arguments for partial dismissal, Radian contends that Plaintiffs' Complaint describes multiple kickback methods but does not allege that Plaintiffs themselves suffered injury from the multiple kickback methods. Specifically, the Complaint accuses Radian of providing kickbacks through business transactions separate from settlement itself, such as pool insurance policies, underwriting, captive reinsurance agreements, performance notes, and other "structured transactions." (Pls.' Compl. at 7.) While Radian acknowledges that these methods are mentioned in the Complaint, it contends that the Complaint identifies only one kickback method, that is, discounted pool insurance, as actually being used as a reward for the mortgage insurance referral of Plaintiffs. (Defs.' Mem. Supp. Mot. to Dismiss at 17.) Consequently, Radian contends that Plaintiffs did not allege injury by any of the other methods and thus requests dismissal of the case as to these other kickback methods.

It is true that Plaintiffs' claim only can continue if they properly allege an injury, for the presence of an injury is an element of a RESPA violation and a prerequisite for standing purposes. 12 U.S.C. § 2607(d), *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). However, a detailed exploration of the ramifications of improperly pleading injury is not necessary at this time, for the Court finds that the Complaint sufficiently alleges Plaintiffs' injury through all of the various kickback methods.

When, as is proper in a Rule 12(b)(6) pleading, Plaintiffs' Complaint is viewed "in the light most favorable to the plaintiff," Plaintiffs have sufficiently alleged this element of injury. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). Specifically, Plaintiffs' Complaint identifies that "the Kickback Scheme" refers to the practices of pool insurance policies, underwriting services, captive reinsurance policies, and performance notes, as well as "other structured transactions." (Pls.' Compl. at 3.) Further in the Complaint, Plaintiffs allege that "Crestar referred [P]laintiffs' primary mortgage insurance business to defendants in accordance with their Kickback Scheme." *Id.* These state-

ments, read together, sufficiently allege the injury to Plaintiffs through any and all of these practices. Defendants, who have the burden to show "beyond doubt that the plaintiff can prove no set of facts in support of his claim," do not sufficiently counter these statements and thus cannot prevail. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84. Accordingly, Radian's motion to dismiss the Complaint as to all kickback methods except for pool insurance is DENIED.

### E. Availability of Injunctive Relief as a RESPA Remedy

As its final ground for partial dismissal, Radian maintains that Plaintiffs fail to state a claim for injunctive relief because RESPA does not allow the issuance of an injunction for a claim initiated by a private citizen. More specifically, Plaintiffs ask the Court to enjoin Radian from "continuing to violate RESPA" and from "billing or receiving primary mortgage insurance premiums in the future" from a purported class which Plaintiffs hope to represent. (Pls.' Compl. at 16.) If Radian's assertion of the law is correct, then the Court has no jurisdiction to order the injunctive relief Plaintiffs request. The Court notes that it is not likely that the relief, even if available, would be necessary, for Plaintiffs, having recently obtained a home mortgage that led to this action, would be unlikely to immediately undertake a new home mortgage. In any event, the anti-kickback provision of RESPA only states that injured individuals receive the right to sue and recover three times the settlement costs, attorneys fees, and court costs, without mentioning injunctive relief. 12 U.S.C. § 2607(2),(5). The Court thus must consider whether private injunctive relief is available as a remedy to private citizens who successfully establish a violation of RESPA's anti-kickback provision.

In answering this question, the Court is aware that "[a]bsent the clearest command

to the contrary from Congress," a district court maintains its "equitable power to issue injunctions." *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 2560, 61 L.Ed.2d 176, 195 (1979). Nevertheless, as this statement demonstrates, Congress retains the authority to alter the presumption that injunctive relief is available. *Id.; see also Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1081 (9th Cir.1986), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987). To determine whether Congress elected to exercise its authority, the Court considers first the language of RESPA itself, and then its purpose.

The wording of the subsections authorizing RESPA remedies suggests that private injunctions are not available. The section that forbids kickbacks, 12 U.S.C. § 2607, also details the remedies, vesting three different types of rights in different parties. 12 U.S.C. § 2607. As mentioned above, RESPA grants a private right to sue in those borrowers "charged for the settlement service involved in the violation"; such borrowers can receive damages "equal to three times the amount" of the overpriced settlement service, as well as court costs and reasonable attorneys fees. *Id.* § 2607(d)(2),(5). But the remedies available for a violation of the RESPA anti-kickback provision also include federal criminal penalties. More specifically, RESPA authorizes criminal prosecution with a penalty of a maximum of a $10,000 fine and/or up to a one year prison term. 12 U.S.C. § 2607(d)(1). Complementing these criminal sanctions and private remedies, the statute also allows the Secretary of Housing and Urban Development, state insurance commissioners, and state attorney generals the right to bring suit to "enjoin violations" of the anti-kickback provision. *Id.* § 2607(d)(4).

In summary, RESPA details multiple methods through which Congress expected to deter lenders and settlement services providers from engaging in kickbacks. When, as in this case, a statute "expressly provides" a specific set of remedies, the Supreme Court has cautioned that courts must "be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146, 155 (1979). In reviewing these sections, the Court finds it significant that Congress, although explicitly establishing a right to seek injunctions for certain governmental enforcement agencies, detailed other specified remedies for private citizens in the same subsection but did not mention injunctive relief as an available remedy for private citizens. Very similar remedy provisions exist in the RICO statute, and several appellate courts have likewise been unwilling to award private parties injunctive rights that might interfere with the "elaborate enforcement scheme" established by Congress. *See, e.g., Dan River Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983) (doubting that a private plaintiff can receive an injunction under civil RICO); *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28 (2d Cir.1983); *Religious Tech. Ctr.*, 796 F.2d 1076, 1081 (9th Cir.1986) (holding that injunctions are not available as a private remedy under civil RICO). When such specific remedies are enumerated, this Court is "compelled to conclude that Congress provided precisely the remedies it considered appropriate" absent "strong indicia of a contrary congressional intent." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435, 447 (1981).

In this instance, there is not sufficiently strong indicia that Congress intended to provide private individuals with the power of an injunction. The first source of Congressional intent, the statute itself, is controlling unless ambiguous. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246, 252 (1981). As discussed above, the anti-kickback provision goes into great detail about remedies but neither grants nor withholds, in so many words, injunctive relief to private citizens.

Similarly, RESPA's purpose also supports the Court's determination that the injunctive relief requested by Plaintiffs is unavailable. When a statute is ambiguous on an issue, then "Congress's purpose in enacting it" becomes critical. *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434, 440–41 (1976). Although legislative history, when available, can be helpful at this stage, RESPA's legislative history does not specifically address this issue. Even so, Congress's purpose, to eliminate kickbacks that "increase unnecessarily" the cost of settlement, is clearly stated in the statute itself, 27 U.S.C. § 2601(b)(2).

Such a purpose is more effectively served if, as the language of the statute suggests, the injunctive power remains in the hands of the state agencies and the Secretary, because individuals in this type of case are unlikely to have the proper incentives to request and enforce injunctive relief. The consequences of such an alternative demonstrate that a system where only governmental agencies may seek injunctive relief would better achieve Congress's purposes. Because settlement services, as defined by RESPA, only occur at the time of settlement, individuals who have already been injured need not worry that they will be overcharged again during the life of the loan. There is, of course, a possibility of re-injury if the individual purchases an additional mortgage from the violating source, but, as home mortgages are not everyday purchases, such a re-

injury would be infrequent. Thus, a RES-PA individual plaintiff would have little need of injunctive protection and would be unlikely and perhaps without standing to ensure that any injunction issued is obeyed. Further compounding the difficulty, in a class action, the entire class would presumably have the right to enforce the injunction through additional lawsuits. These numerous and piece-meal injunctions could potentially overwhelm the courts and increase the litigation costs of the settlement services providers faced with these multiple injunctive suits, which could also increase the cost of the settlement services for potential individual homeowners in need of private mortgage insurance.

In contrast, the state insurance commissioners, attorney generals, and the Secretary, as agents of their respective governments, represent the interests of a large group of present and future home mortgage purchasers. These governmental officials are thus keenly interested in ensuring the continuing proper behavior by an offending settlement service provider or lender. They have the incentive to ensure that an injunction is followed, and, because of the larger group that they may represent, they can seek and enforce state-wide or, in the case of the Secretary, country-wide injunctions. These reasons convince the Court that, in light of RESPA's purpose, injunctive relief is unavailable for injured individuals.

In light of the multi-faceted remedial scheme that Congress expressly establishes and the lack of evidence that Congress intended a different result, the Court finds that an injunction is unavailable in RESPA private actions. Injunctions are available pursuant to RESPA only upon the request of the state insurance commissioner, the state attorney general, or the Secretary, and none of these parties have elected to file or intervene in this case to seek equitable relief. As a result, Radian's Motion to Dismiss any aspect of Plaintiffs' Complaint which seeks injunctive relief is therefore GRANTED.

## III. CONCLUSION

As discussed above, Plaintiffs filed their Complaint after the statute of limitations had expired, making their cause of action time-barred unless they properly alleged circumstances of fraud or deception that justify equitable tolling. Plaintiffs' Complaint fails to allege one of these requirements, fraudulent concealment, with the particularity required. Although this flaw warrants dismissal of the claim, the Court will provide Plaintiffs with an extension of thirty days from the date of this Order within which to amend their Complaint to sufficiently state allegations of fraudulent concealment. If Plaintiffs do not amend within this thirty-day extension period, Defendants' present Motion to Dismiss, designated as Document # 9, WILL BE GRANTED by Order and Judgment of this Court and Plaintiffs' case will be dismissed with prejudice. If Plaintiffs do in fact amend their Complaint. Defendants are free to renew that portion of their Motion to Dismiss with respect to the amendment of Plaintiffs' Complaint as allowed by the present ruling of the Court. Defendants' renewed Motion to Dismiss is ordered to be filed within the time period specified by the applicable federal and local procedural rules of this district.

As to Defendants' other reasons offered in support of their Motion to Dismiss, the Court ORDERS that Defendants' Motion to Dismiss [Document # 9] is DENIED to the extent that it is based upon Defendants' assertion that the McCarran–Ferguson Act requires preemption by the insurance laws of the state of North Carolina as to the matters asserted by Plaintiffs. Defendants' Mo-

tion to Dismiss is also DENIED to the extent that Defendants assert that Plaintiffs failed to adequately state a claim for a RESPA violation based upon kickback schemes other than insurance pooling.

However, for the reasons stated herein, Defendants' Motion to Dismiss [Document # 9] is GRANTED to the extent that it seeks dismissal of Plaintiffs' request for private injunctive relief pursuant to 12 U.S.C. § 2607.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim [Document # 9] is GRANTED with respect to Plaintiffs' request for private injunctive relief pursuant to 12 U.S.C. § 2607.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [Document # 9] is DENIED to the extent that it is based upon Defendants' assertion that the McCarran–Ferguson Act requires preemption by the insurance laws of the state of North Carolina as to the matters asserted by Plaintiffs. Defendants' Motion to Dismiss is also DENIED to the extent that Defendants assert that Plaintiffs failed to adequately state a claim for a RESPA violation based upon kickback schemes other than insurance pooling.

IT IS FURTHER ORDERED that Plaintiffs Richard C. Mullinax, Jr. and Perry Pike are GRANTED an extension of thirty (30) days from the date of this ORDER within which to amend their Complaint with respect to their allegations of equitable tolling on the basis of fraudulent concealment. If Plaintiffs fail to amend their Complaint within this time period, Defendants' Motion to Dismiss for Failure to State a Claim shall be GRANTED and Plaintiffs' Complaint shall be dismissed with prejudice. If Plaintiffs do amend their Complaint, consistent with the ruling of the Court in its accompanying Memorandum Opinion, within the required time period, Defendants shall appropriately respond to Plaintiffs' amended Complaint within the period provided by the appropriate federal and local Rules of this district in order to file a Motion to Dismiss the amended Complaint. The Court will retain jurisdiction of this matter solely for the purpose of addressing any further matters relating to the potential amendment of Plaintiffs' Complaint and any response by Defendants. In all other respects, this matter may proceed according to the normal administrative scheduling for pre-trial matters.