Denise MINTER, et al., individually and on behalf of a class of consumers similarly situated

v.

WELLS FARGO BANK, N.A. et al.

Civil Action No. WMN–07–3442.

United States District Court, D. Maryland.

Jan. 14, 2009.

Cyril Vincent Smith, III, Peter M. Nothstein, Zuckerman Spaeder LLP, Benjamin Howard Carney, Quinn, Gordon & Wolf, Chtd., Baltimore, MD, Richard S. Gordon, Cory L. Zajdel, Quinn Gordon and Wolf Chtd., Towson, MD, for Denise Minter.

Brian M. Forbes, Irene Claire Freidel, K and L Gates LLP, Boston, MA, Brian W. Stolarz, David T. Case, K and L Gates LLP, Jay N. Varon, Foley and Lardner LLP, Soyong Cho, Thomas M. Hefferon, David L. Permut, Goodwin Procter LLP, Washington, DC, for Defendants.

## *MEMORANDUM*

WILLIAM M. NICKERSON, Senior District Judge.

Presently pending before this Court are two motions filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank"), Wells Fargo Ventures, LLC ("Wells Fargo Ventures") (collectively, Wells Fargo Bank and Wells Fargo Venturers will be referred to as Wells Fargo), Walker Jackson Mortgage Corp. ("Walker Jackson"), Prosperity Mortgage Company ("Prosperity"), and Long & Foster Real Estate, Inc. ("Long & Foster"): a motion for summary judgment, Paper No. 39, and a Motion for Limited Stay of Discovery Pending Resolution of Motion for Summary Judgment or, in the Alternative, Motion for Protective Order Pursuant to Rule 26(c).[1] Paper

1. Plaintiffs have also filed a Motion for Leave to File a Limited Sur-reply, alleging that De-

No. 47. The motions are fully briefed. Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion for summary judgment will be granted in part and denied in part and that Defendants' motion to stay will be denied as moot.

## I. BACKGROUND

On December 26, 2007, Plaintiffs Denise Minter and Rachel and Jason Alborough ("Named Plaintiffs"), for themselves and on behalf of consumers similarly situated, filed this class action alleging that Long & Foster and Wells Fargo created a sham "Affiliated Business Arrangement" (ABA) known as Prosperity Mortgage Company. As alleged by Plaintiffs, Wells Fargo and Long & Foster created Prosperity to provide Wells Fargo with a pipeline of referrals from Long & Foster, a real estate broker, and to provide Wells Fargo a means to pay kickbacks to Long & Foster for those referrals, in violation of the Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. § 2601, et seq. (RESPA). First Amended Complaint (FAC) at ¶ 1.[2] In addition to violations of RESPA, Plaintiffs also assert violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), pursuant to 18 U.S.C. § 1962(a), (c), and (d), as well as state law claims including fraud, civil conspiracy, unjust enrichment and violations of the Maryland Consumer Protection Act, Md. Com. Law Code Ann. § 13–101, et. seq.

Plaintiffs assert that under Defendants' scheme, Wells Fargo solicited mortgage origination work from Long & Foster, promising that Long & Foster could make additional money for each loan application referred, without performing any additional work. Wells Fargo, together with Long & Foster and Walker Jackson, then set up Prosperity, which appeared on closing documents as a mortgage lender. FAC at ¶ 3.

Once Prosperity was established, its name was placed on customers' settlement documents as an entity that had performed *bona fide* and substantial mortgage loan origination services. The FAC alleges that although Prosperity charged and was paid substantial fees by borrowers for each mortgage loan originated, Prosperity actually performed little or no work in connection with the mortgage transactions. The FAC also alleges that following the settlement, the fees attributable to Prosperity were actually split with and paid to Long & Foster without disclosing to the borrower that the fees were to reward Long & Foster for referring the mortgage loan to Wells Fargo. FAC at ¶ 4.

fendants raised new arguments in their Reply brief. Paper No. 77. This Court has not considered the arguments made in that motion, and because it will rule in favor of Plaintiffs, will deny it as moot.

Also pending before the Court are: (1) a Joint Motion for Entry of Stipulated Order Regarding Confidential Materials, Paper No. 53; (2) multiple motions to seal, Paper Nos. 44, 45, 70; and Plaintiffs' Motion to Amend Scheduling Order. Paper No. 79. The joint motion for an order regarding confidential materials and the motions to seal will be granted. Additionally, because this Court will not limit the scope of discovery as requested by Defendants, Plaintiffs' motion to amend the scheduling order will be granted.

2. According to Defendants, in 1993, Walker Jackson, originally known as Prosperity Mortgage Corporation, and Wells Fargo Bank, then known as Norwest Mortgage, Inc., formed Prosperity Mortgage Company by joint venture. Each joint venturer owned a 50% share in Prosperity. In April 2004, Wells Fargo Bank assigned its 50% interest in Prosperity to Wells Fargo Venturers, a wholly-owned subsidiary of Wells Fargo Bank. Walker Jackson is a wholly-owned subsidiary of The Long & Foster Companies and is an affiliate of defendant Long & Foster.

According to Plaintiffs, the transactions of the Named Plaintiffs exemplify the working of the above-described scheme. Denise Minter purchased her home on December 24, 2006, using Long & Foster as her real estate broker. In connection with the origination of her $138,750 mortgage loan, Minter paid $945.00 in settlement-related charges to Prosperity. FAC at ¶ 6. The Alboroughs purchased their home on April 12, 2007, also using Long & Foster. In connection with the origination of their $185,625 mortgage loan, the Alboroughs paid $777.03 in settlement-related charges to Prosperity. FAC at ¶ 7.

Plaintiffs allege that neither of their loans were fully funded by the "lender," Prosperity. Instead, the loans which were originated in the name of Prosperity constituted only a portion of the funds necessary to fund the Named Plaintiffs' transactions.[3] Wells Fargo, Plaintiffs allege, not Prosperity, directly extended a second loan for between 13 and 20% of the purchase price at a much higher interest rate to complete the funding for each transaction. Pls.' Ex. 1 and 19 (Alborough and Minter second mortgage documents and HUD–1 forms). Plaintiffs allege that these second loans were used to increase Wells Fargo's profits to make up for the referral fees that Wells Fargo had to pay Long & Foster under the Prosperity Mortgage scheme. Thus, Plaintiffs argue, although the Named Plaintiffs paid fees to Prosperity, Prosperity did none of the actual work associated with the fees and retained none of those fees. Instead, all of the fees paid to Prosperity were unearned referral fees and kickbacks retained by Wells Fargo and were paid at the expense and to the detriment of borrowers, in violation of state and federal laws. FAC ¶ 66.

Defendants move for summary judgment as to all counts against all Defendants.

## II. STANDARDS OF LAW

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty*, 818 F.2d at 1128 (citing *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir.1986)). Furthermore, the mere existence of some fac-

---

**3.** Moreover, Plaintiffs allege that even the loans originated in Prosperity's name were not funded by Prosperity. Instead, Plaintiffs argue that the funding actually came from Wells Fargo.

tual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

## III. DISCUSSION

On July 15, 2008, Defendants filed their motion for summary judgment. At the same time, Defendants also filed a motion to stay or limit discovery, arguing that the facts set forth in their summary judgment papers "establish that Prosperity is a *bone fide* mortgage lender that performs all of the core services necessary to make and fund mortgage loans." Accordingly, Defendants argue, the case can be resolved on summary judgment and discovery should be stayed or significantly narrowed under Fed.R.Civ.P. 56(f). Plaintiffs respond to both motions by arguing, inter alia, that summary judgment is not appropriate at this stage of the litigation because Plaintiffs have not had an opportunity to conduct full discovery.[4] Additionally, Plaintiffs point out numerous factual issues that must be fleshed out through discovery.

■ As a general rule, summary judgment is not appropriate prior to the completion of discovery. *Webster v. Rumsfeld*, 156 Fed.Appx. 571, 575 (4th Cir. 2005) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [5] (emphasis added))); *see also Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995) ("the requirement that the non-moving party respond specifically to a summary judgment motion is qualified by Rule 56(f)'s requirement that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition") (internal quotations omitted). Rule 56(f) provides this Court with the discretionary authority, in appropriate cases, to deny a premature motion for summary judgment where the nonmoving party demonstrates that he has not had adequate time for discovery or needs additional time to complete it. *See* Fed. R.Civ.P. 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to undertaken; or (3) issue any other just order.").

■ In this case, Defendants have filed their motion for summary judgment at a very early stage. Although Defendants have produced some documents to Plaintiffs, Plaintiffs have not yet had the opportunity to take a single deposition. Additionally, there is evidence that Defendants have selectively produced only those documents that support the arguments in their motion for summary judgment. For example, Defendants produced the Joint Venture Agreement between Norwest Mortgage, Inc. (the predecessor to Wells Fargo Bank) and Prosperity Mortgage

---

**4.** See footnote 6.

**5.** The 2007 amendments changed the language of Rule 56(c), but these were stylistic changes only.

Company (the predecessor to Walker Jackson) that formed Prosperity. Ex. 1 to Jackson Decl. (JV Agreement). The Joint Venture Agreement states that additional capital contributions will be made in the form of an "Asset Purchase Agreement." JV Agreement at § 4.01. As of the filing of Plaintiffs' Opposition brief, this Asset Purchase Agreement had not been produced either to this Court or to Plaintiffs. Defendants, however, did produce the Asset Purchase Agreement upon submission of their Reply brief. Ex. 1 to Second Jackson Decl. The late production of a document which was exclusively in the control of Defendants and that could provide Plaintiffs with information essential to their claims provides good reason to allow for further discovery.[6] *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247–48 (4th Cir.2002) ("Generally speaking, 'sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party.'") (quoting 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)).

Allowing for full discovery in this case could very well reveal genuine issues of material fact. For example, Defendants contend that "Prosperity sells its mortgage loans—as it sold plaintiffs' loans—to Wells Fargo Bank and other investors on the secondary mortgage market, and thus those sales are exempt from RESPA." Mot. for Summ. J. at 23. It is true that "[a] bona fide transfer of a loan obligation in the secondary market is not covered by RESPA." 24 C.F.R. § 3500.5(b)(7). This exemption, however, expressly excludes "mortgage broker transactions that are table-funded."[7] *Id.;* 24 C.F.R. § 3500.2. It is exactly this "table-funding" that Plaintiffs accuse Defendants of practicing. Opp' n to Mot. for Summ. J. at 27–30.

Plaintiffs make this accusation based, in part, on a deposition given by Mr. Michael Dunn in *Robinson v. Fountainhead Title Group Corporation, et. al.,* CA 03–03106, in which Mr. Dunn stated that Wells Fargo "table-funds" loans for Prosperity. Pls.' Ex. 2 at 21, 30, Michael Dunn's Deposition (Dunn Depo.). Clearly, this statement supports Plaintiffs' allegation that Wells Fargo, not Prosperity, was the actual source of funding for the Named Plaintiffs' mortgage loans. In addition to stating that Wells Fargo "table-funds" Prosperity's loans, Mr. Dunn also testified that, through an "accounting method," the profits of Prosperity are "ultimately split between Long & Foster and Wells Fargo." Dunn Depo. at 46–47. Again, this statement tends to show evidence that Prosperity is a sham ABA.

Despite Mr. Dunn's statements under oath, Defendants now claim that the loans at issue in this case are bone fide secondary market transactions not subject to RESPA and that Long & Foster and Wells Fargo do not split the profits of Prosperity. In support of this argument, Defendants submit a sworn declaration from Mr. Dunn disclaiming his previous deposition testimony and stating that "I am now informed, as I was not before, that Prosperity obtains funds for its loans through use of a warehouse line of credit provided by Wells Fargo Bank, and that the money

---

**6.** In compliance with the Federal Rules of Civil Procedure, Plaintiffs have filed a Rule 56(f) affidavit which outlines in detail the discovery that would allow them to properly respond to a motion for summary judgment. Ex. 3 to Pls.' Opp'n, Richard S. Gordon Decl.

**7.** Under RESPA, "table-funding" means "a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2.

sent to the closing table is Prosperity's." Paper No. 42, Dunn Decl. The discrepancies between Mr. Dunn's 2007 deposition testimony and his 2008 declaration require, at the very least, that this Court allow Plaintiffs to depose him and move forward with discovery.

■ This is only one example of the questions left open by the incomplete record. As both parties agree, the central question in this case is whether "Prosperity is a *bone fide* mortgage lender that performs all of the core services necessary to make and fund mortgage loans." Defs.' Mot. to Stay at 1. If Prosperity is a *bone fide* lender, most if not all of Plaintiffs' claims fail. To determine whether Prosperity is a true provider of services, this Court looks to a 10–factor test outlined by the United States Department of Housing and Urban Development (HUD) in its 1996–2 Statement of Policy regarding affiliated business arrangements (SOP). 61 Fed.Reg. 29,258 (June 7, 1996); *see also Benway v. Resource Real Estate Services, LLC*, 239 F.R.D. 419, 424 (D.Md.2006) (explaining that HUD's 10–factor test is used to determine whether an ABA is a "bona fide provider of settlement services" or simply a sham).[8] This 10–factor test is a factually intensive analysis and requires a fully developed factual record. As only one example, this Court points to factor number three: whether the entity manages its own business affairs. Plaintiffs have the right to depose managers of the

Defendant companies in order to determine who actually runs or controls Prosperity on both a day-to-day and on a strategic/long-term basis. It has also been noted that Prosperity has no Board of Directors. This raises substantial questions and Plaintiffs must be allowed to explore them. Accordingly, this Court will deny Defendants' motion for summary judgment as to all but Plaintiffs' claim for injunctive relief under RESPA, discussed *infra*.

■ Unlike most of the issues raised by Defendants in their motion for summary judgment, whether injunctive relief is available under RESPA or civil RICO, is a purely legal question. The Court will first address Defendants' contention that RICO does not permit private plaintiffs to seek injunctive relief. The only two courts of appeals to have addressed this issue directly, the Ninth Circuit, *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir.1986), and the Seventh Circuit, *Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir.2001), *rev'd* on other grounds, *Scheidler v. Nat'l Org. For Women, Inc.*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), are split. Additionally, the other courts of appeals that address the point in *dicta* are also split. *Compare In re Fredeman Litig.*, 843 F.2d 821, 828–30 (5th Cir.1988), and *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28–29 (2d Cir.1983) (expressing doubt about availability of in-

---

**8.** The factors have been summarized as follows:

(1) does the entity have sufficient initial capital and net worth; (2) is the entity staffed with its own employees; (3) does the entity manage its own business affairs; (4) does the entity have a separate office; (5) are substantial services provided by the entity; (6) does the entity perform substantial services by itself; (7) if the entity contracts out services, are they from an independent company; (8) if the entity contracts out

work to another party, is the party performing any contracted services receiving a payment for services or facilities provided that bears a reasonable relationship to the value of the services or goods received; (9) is the new entity actively competing in the marketplace for business; and (10) is the entity sending business exclusively to one of the settlement providers that created it.

*Benway*, 239 F.R.D. at 423 n. 7 (internal citations omitted).

junctive relief for private plaintiffs), with *Bennett v. Berg*, 710 F.2d 1361, 1366 (8th Cir.1983) (McMillan, J., concurring) (suggesting injunctive relief available); *see also Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 848 (1st Cir.1990), *Northeast Women's Ctr. v. McMonagle*, 868 F.2d 1342, 1355 (3d Cir.1989) (noting controversy but expressing no opinion on resolution). The Fourth Circuit has implied, in *dicta*, that injunctive relief is not available to a private civil RICO plaintiff, but reserved ultimate judgment on the matter. *See Johnson v. Collins Ent'mt*, 199 F.3d 710, 726 (4th Cir.1999) (" '[t]here is substantial doubt whether RICO grants private parties ... a cause of action for equitable relief.' ") (quoting *Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir.1983)).

Faced with such a split, this Court finds that the Ninth Circuit provides a more well-reasoned and convincing argument. In *Wollersheim*, the court analyzes the language of the RICO statute,[9] as well as its legislative history. As explained by the *Wollersheim* court, part (a) of the RICO statute is a broad grant of equitable jurisdiction to the federal courts, part (b) permits *"the government "* to bring actions for equitable relief, and part (c) provides a private plaintiff with the right to recover treble damages, costs and attorney's fees. 796 F.2d at 1082 (emphasis in original). Although part (c) does not expressly limit private plaintiffs "only" to the enumerated remedies, explains the court, its "inclusion of a single statutory reference to private plaintiffs, and the identification of a damages and fees remedy for such plaintiffs ... logically carries the negative implication that *no other remedy* was intended to be conferred on private plaintiffs." *Id.* at 1082–83 (emphasis in original) (internal citations omitted).

In addition to this textual argument, the Ninth Circuit describes two separate episodes from the history of civil RICO's legislative passage that indicate that the legislative intent behind the statute did not include a private right to an injunction.

> *First,* the House [of Representatives] rejected an amendment, described as 'additional civil remedy,' which would expressly permit private parties to sue for injunctive relief under section 1964(a). Second, in the very next year after RICO's enactment, Congress refused to enact a bill to amend section 1964 and give private plaintiffs injunctive relief.

*Id.* at 1085 (emphasis in original).

Finally, the *Wollersheim* court reinforces its decision by recalling that civil RICO was intended to provide a private cause of action modeled on the analogous provision of the antitrust laws. *Id.* at 1086 (internal citations omitted). "The lan-

---

**9.** RICO's civil remedies section provides, in pertinent part:

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to ... imposing reasonable restrictions on the future activities ... of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, ... or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.
(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee....

18 U.S.C. § 1964.

guage of the treble damages antitrust remedy, section four of the Clayton Act, 15 U.S.C. § 15(a), is similar to that of civil RICO. The Supreme Court has explicitly held that the language of section 4 *precludes* private injunctive relief." *Id.* at 1087 (emphasis in original). Based on these arguments, as more fully described in *Wollersheim,* this Court holds that there is no private right of injunctive relief under civil RICO and will strike the prayer for injunctive relief in Counts II–VI of the FAC.

 In attempting to determine whether RESPA allows for the issuance of an injunction for a claim initiated by a private citizen, this Court has been able to locate only one case addressing this issue.[10] In *Mullinax v. Radian Guar. Inc.,* 199 F.Supp.2d 311, 334 (M.D.N.C.2002), the court held that an injunction is unavailable in RESPA private actions. As with RICO, the language of the subsections authorizing RESPA remedies suggests that private injunctions are not available.[11] RESPA details multiple methods through which Congress expected to deter lenders and settlement services providers from engaging in kickbacks. When, as in this case, a statute "expressly provides" a specific set of remedies, the Supreme Court has cautioned that courts must "be chary of reading others into it." *Transamerica*

*Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). As noted by the *Mullinax* court, although Congress explicitly established a right to seek injunctions for certain governmental enforcement agencies and detailed other specified remedies for private citizens in the same subsection, it did not mention injunctive relief as an available remedy for private citizens. 199 F.Supp.2d at 334. Thus, in accordance with *Mullinax,* this Court finds that there is no private right to injunctive relief under RESPA and will strike the prayer for injunctive relief in Count I.

### III. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be denied in part and granted in part and Defendants' motion to stay will be denied as moot. A separate order will issue.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 14th day of January, 2009, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That the motion for summary judgment filed by Defendants Wells Fargo Bank, N.A., Wells Fargo Ventures, LLC,

---

**10.** In fact, Plaintiffs, in ignoring Defendants' argument on this point, do not seem to contest that there is no private right to injunctive relief under RESPA. Opp'n to Summ. J. at 49–50.

**11.** The section that forbids kickbacks, 12 U.S.C. § 2607, also details the remedies, vesting three different types of rights in different parties. 12 U.S.C. § 2607. RESPA gives those borrowers "charged for the settlement service involved in the violation" a right to sue; such borrowers can receive damages "equal to three times the amount" of the overpriced settlement service, as well as court costs and reasonable attorneys fees. *Id.*

§ 2607(d)(2), (5). But the remedies available for a violation of the RESPA anti-kickback provision also include federal criminal penalties. More specifically, RESPA authorizes criminal prosecution with a penalty of a maximum of a $10,000 fine and/or up to a one year prison term. 12 U.S.C. § 2607(d)(1). Complementing these criminal sanctions and private remedies, the statute also allows the Secretary of Housing and Urban Development, state insurance commissioners, and state attorney generals the right to bring suit to "enjoin violations" of the anti-kickback provision. *Id.* § 2607(d)(4).

Walker Jackson Corp., Prosperity Mortgage Company, and Long & Foster Real Estate, Inc., Paper No. 39, is GRANTED in part and DENIED in part, in that the Court will strike Plaintiffs' prayer for injunctive relief in Counts I–VI;

2. That Defendants' motion to stay discovery, Paper No. 47, is DENIED as moot; 3. That Plaintiffs motion for leave to file a surreply, Paper No. 77, is DENIED as moot;

4. That the Joint Motion for Entry of Stipulated Order Regarding Confidential Materials, Paper No. 53, is GRANTED;

5. That the motions to seal, Paper Nos. 44, 45, and 70, are GRANTED;

6. That Plaintiffs' motion to amend the scheduling order, Paper No. 79, is GRANTED; and

7. That the Clerk of the Court shall transmit copies of the accompanying Memorandum and this Order to all counsel of record.